(76 South. 220)

No. 22533.

## STATE v. OVERBY.

(June 16, 1917.)

*(Syllabus by the Court.)*

MUNICIPAL CORPORATIONS ⬅➡595—INSPECTION LAWS—OBJECT.

"The object of inspection laws is to protect the community, so far as they apply to domestic sales, from fraud and impositions, and, in relation to articles designed for exportation, to preserve the character and reputation of the state in foreign markets. They are also incidentally designed to protect manufacturers and vendors themselves against unfounded and unjust claims of vendees and consumers. The right to pass inspection laws is not granted to Congress, and consequently remains subject to state legislation, as an incident of the police power; but it is subject to the paramount right of Congress to regulate commerce with foreign nations and among the several states."

Appeal from Sixth Judicial District Court, Parish of Morehouse; Ben C. Dawkins, Judge.

J. D. Overby was convicted of crime, and he appeals. Affirmed.

J. T. Shell, of Bastrop, for appellant. A. V. Coco, Atty. Gen., and Fred M. Odom, Dist. Atty., of Bastrop (Vernon A. Coco, of Marksville, of counsel), for the State.

SOMMERVILLE, J. Defendant appeals from conviction and sentence for shipping cattle from the parish of Morehouse without first having such cattle inspected and a record of the marks, brands, and a general description made by a cattle inspector as provided by an ordinance of the parish.

Ordinance 148 of police jury of Morehouse parish makes it unlawful to drive or ship any cattle from the parish without having them inspected by an inspector appointed by the president of the police jury, and without paying the inspector a fee of ten cents for each animal inspected. It is further made the duty of the inspector to make a record of the marks, brands, and a general description of the cattle, and to report same to the district attorney, together with the name of the owner or shipper. A violation of the ordinance is declared to be a misdemeanor, punishable by fine or imprisonment, or both.

There was filed a motion to quash the bill of information on the ground that the ordinance is unconstitutional, illegal, null, and void, and the police jury was without authority to pass it; that the police jury can exercise only such powers as have been expressly granted to them in express terms, etc.; that the ordinance creating the office of cattle inspector provides for his appointment, and fixes his compensation; that the ordinance orders a contribution or tax to be paid by the owner of ten cents per head on cattle inspected, direct to the said inspector as compensation of said inspector, and the said ordinance does not provide that said tax or fee shall be paid into the parish treasury, and then paid out on appropriation by the police jury; that the ordinance deprives defendant of his property without due process of law; that the tax is not public in its nature, not equal or uniform, and not imposed with reference to the value put on said property for purposes of state taxation; and that the penalty named deprived him of his liberty without due process of law.

The state filed a motion to dismiss the appeal on the ground that the court was without appellate jurisdiction, as no fine exceeding $300 or imprisonment exceeding six months was actually imposed, and no municipal law or ordinance of the state has been declared unconstitutional. But the appellate jurisdiction of this court also extends, under article 85 of the Constitution, "to all cases in which the constitutionality or legality of any fine, forfeiture, or penalty imposed by a municipal corporation shall be in contestation." Defendant has contested the constitutionality or legality of the fine or penalty imposed by the terms of the ordinance; and the motion to dismiss the appeal is denied.

Defendant urges that the ordinance under which he has been prosecuted was passed by the police jury without any authority to that end. The Revised Statues, under the heading of police juries, their powers, duties, etc., in section 2743 provides:

"The police juries shall have power to make all such regulations as they may deem expedient. * * *

"Fifth. To pass all ordinances and regulations, which they shall deem necessary in relation to the marking, the sale, destruction of cattle in general, and especially of wild cattle, which are not marked; and also of horses and mules; and to take any measures concerning the police of cattle in general, in all the cases not provided for by law; to fix the time in which the cattle may be suffered to rove in the parishes of this state, where that custom prevails, so that such roving may not be detrimental to the crops; to determine what animals shall not be suffered to rove, and in what cases they may lawfully be killed. * * *

"Eleventh. To appoint all officers necessary to carry into execution the parish regulations, and to remove them from office."

Defendant states in his brief:

"Because of rumors of cow stealing the police jury of the parish of Morehouse, basing their authority on the fifth paragraph of section 2743 of the Revised Statutes, passed an ordinance, or attempted to, prohibiting the shipping or driving of cattle from the parish without first having them inspected and a record made of the brand, etc., inferentially for the purpose of preserving the same as evidence for the state in case of the violation of the law against the crime of cow stealing. * * * This ordinance, then, is for the purpose of ascertaining whether or not the shipper or driver has stolen cattle in his herd. * * * The shipper or driver of cattle from the parish of Morehouse must show in advance that he is innocent of cow stealing, and that he is not in possession of stolen cattle."

The law quoted from the Revised Statutes clearly gives the police juries the right—

"to pass all ordinances and regulations which they shall deem necessary in relation to the marking, the sale, destruction of cattle in general, * * * and to take any measures concerning the police of cattle in general, in all cases not provided for by law."

And it, the police jury of Morehouse, provided for the inspection of cattle in the ordinance complained of, which clearly falls within the police power granted by the state

to the police jury. The power given in the Revised Statutes to the police jury "to take any measures concerning the police of cattle in general" is a grant of "police power," as that term has generally been understood and interpreted in this state. In the Slaughterhouse Cases, 16 Wall. (83 U. S.) 36, 21 L. Ed. 394, it was said that the "police power" is, from its nature, incapable of any exact definition or limitation, and in Stone v. Mississippi, 101 U. S. 814, 818, 25 L. Ed. 1079, that:

It is "easier to determine whether a particular case comes within the general scope of the power than to give an abstract definition of the power itself which will be in all respects accurate."

And again in the License Cases, 5 How. (46 U. S.) 504, 12 L. Ed. 256:

"Without attempting to define what are the peculiar subjects or limits of this power, it may safely be affirmed that every law for the restraint or punishment of crime, for the preservation of the public peace, health, and morals, must come within this category."

See 6 Words and Phrases, p. 5425.

The ordinance in question was clearly enacted for the restriction and punishment of the crime of cattle stealing. It was therefore a measure concerning the "police of cattle," which the Legislature authorized the police juries of the state to adopt.

It, the ordinance, required that cattle be inspected, and a record made of their marks.

"Laws requiring cattle to be inspected, weighed, or measured before being sold are valid, and vendors may be made to furnish samples gratuitously to aid enforcement of such regulations, and provision may be made by which, on application of an interested person, an inspection of property shall be made, in order to ascertain. enforce, or protect such person's interest." 8 Cyc. 1104.

"The object of inspection laws is to protect the community, so far as they apply to domestic sales, from frauds and impositions, and in relation to articles designed for exportation to preserve the character and reputation of the state in foreign markets. They are also incidentally designed to protect manufacturers and vendors themselves against unfounded and unjust claims of vendees and consumers. The right to pass inspection laws is not granted to Congress, and consequently remains subject to state legislation, as an incident of the police power; but it

is subject to the paramount right of Congress to regulate commerce with foreign nations and among the several states." 22 Cyc. 1364.

Inspection laws, where fees have been charged for inspection, have been passed with reference to marketable things, such as milk, flour, meat, fertilizers, etc., to quarantine, and rewards offered by police juries and municipal authorities for evidence of crime have been construed to be legal and constitutional.

In the case of Carnes v. Police Jury, 110 La. 1011, 35 South. 267, it is said in the syllabus:

"The power to regulate the police of taverns, grogshops, etc., is not confined to the mere adoption of regulations, but extends to the taking of such measures as may be deemed expedient to prevent the violation of the regulations after they are adopted, such as the offering of a reward for evidence on which to convict offenders."

In the case of State v. Fosdick, 21 La. Ann. 256, in considering an ordinance which imposed an inspection fee on hay sold in the city of New Orleans, where it was urged that said inspection and the imposing of a penalty for failing to comply therewith were in conflict with the Constitution of the United States, it was held:

"The object of the inspection laws is doubtless to ascertain whether the merchandise is fit for commerce and to protect the community from fraud. In the act we are now considering we can perceive no import duty or tax, or any benefit resulting to the state except to protect its citizens and its market from commodities that are unfit for commerce. The fees allowed to the inspection officers are only a remuneration for their services; the defendant has not complained that they are excessive. * * * The state derives no revenues therefrom. The acts are in the nature of police regulations established for the protection of the markets of this city against the sale of products unfit for commerce. The Constitution expressly permits the states to pass inspection laws."

In the case of Clark v. Board of Health, 30 La. Ann. 1351, where the state passed an act providing for gauging and inspecting coal oil, etc., where the board of health was authorized to collect a fee of a quarter of a cent a gallon for gauging and inspecting, and a penalty for selling or exposing for sale coal oil or illuminating oil or fluid, without having them gauged and inspected, it was held:

"There is nothing in this act that can be supposed to be in violation of this article (118) of the Constitution except the fee of a quarter of a cent per gallon, or 12½ cents per barrel, which section 4 authorizes the board of health in New Orleans to collect.

"As early as 1805 an act of the Legislature was passed regulating the inspection of flour, beef, and pork, fixing the weight of the barrel, the fees for inspection, and penalties for violation of the * * * act. In 1816 an act was passed regulating the inspection of tobacco in hogsheads and casks, fixing the fees for inspection, and prescribing penalties, etc. . Hay was also made subject to inspection, and so were weights and measures. These laws have been revised and re-enacted, and they are local regulations; they are now in force. Similar laws exist in all the states; and yet it is a fundamental principle in all well organized governments that taxation must be uniform and equal; and this principle derives no * * * force by the mere formulation of it in written Constitutions.

"Inspection laws are a necessity. They have for their object the protection of buyers and consumers against fraud in weights and measures, and of life and property against the risks of exposing for sale and selling, without proper notice and warning, dangerous commodities, and such articles of food as are unfit for use, or, from their condition, would be injurious to health.

"It is admitted, indeed it cannot be questioned, that as inspection laws are necessary, it is also necessary to compensate the person charged with the important duties required of inspectors. The specific objections to the act in question are that the fees fixed by section 3 are applicable to dealers in New Orleans alone, and are therefore partial, and that they are not paid to the inspectors as compensation for their services, but to the board of health; and it is urged that this feature makes them a tax. * * *

"All such legislation falls within the police power of the state; and the state has chosen, in view of the great interest involved, to delegate to the board of health the authority and the duty to see that the law is enforced. There can be no reason why the state should not thus provide for the execution of this branch of the police power, as validly as it might have contented itself with providing for the appointment of the inspectors by the Governor, or otherwise, and have fixed their fees. It was not unwise to require the board to take upon itself this inspection, and to make the inspectors dependent upon and responsible to the board."

A similar ruling is found in City v. Hop Lee, 104 La. 601, 29 South. 214, where an ordinance provided for the inspection of laundries and for an inspection fee.

In this case the charge of ten cents for each head of cattle inspected is purely and simply to cover the cost of inspection, and it is not taking defendant's property, and the fine and penalty do not deprive him of his liberty, without due process of law.

The judgment appealed from is affirmed.

O'NIELL, J., is of the opinion that this court is without jurisdiction, for the reasons assigned in his dissenting opinion in State v. Hagen, 67 South. 935; that is, that a fine or penalty imposed by a police jury ordinance is not imposed by a municipal corporation.