(120 So. 30)

No. 29498.

**OUBRE et al. v. CITY OF DONALDSON-VILLE.**

Nov. 26, 1928.

Rehearing Denied Jan. 28, 1929.

Charles T. Wortham, of Donaldsonville, for appellants.

Walter Lemann, of Donaldsonville, for appellee.

ST. PAUL, J. Plaintiffs, who are seven butchers doing business in the city of Donaldsonville, seek an injunction restraining said city from enforcing an ordinance requiring an inspection at regular periods of all places where fresh meats are sold and fixing an inspection fee of $120 per annum to be paid by each of said places.

It is not contended that said city is without authority to provide for said inspection, "for we take it that no one will seriously contend that the city has no authority to inspect a business in the cleanliness of which so many are directly interested." City of New Orleans v. Sam Kee, 107 La. 762, 31 So. 1014. Cf. Act 136 of 1898, § 15, par. 3. And "the preservation of the health of the population is uniformly recognized as a most important municipal function." 43 Corpus Juris, p. 207, § 207.

■ It is contended, however, that, even though the city may have the right to make the inspection, nevertheless it can charge no fee for such inspection in the absence of express legislative authority to do so. But the right to make the inspection carries with it by necessary implication the right to charge the cost of such inspection to the business inspected. City of New Orleans v. Sam Kee, 107 La. 762, 31 So. 1014; State v. Overby, 142 La. 22, 76 So. 220; Louisiana State Board of Health v. Standard Oil Co., 107 La. 713, 31 So. 1015. "It is neither a tax nor the imposition of a license for revenue purposes." City of New Orleans v. Hop Lee, 104 La. 601, 29 So. 214.

■ But the contention most seriously urged is that the fee charged is excessive, and therefore a mere pretext for the raising of general revenue under the guise of inspection fees. But that involves only a question of fact, to wit, whether said charges grossly exceed the cost of inspection. City of Baton Rouge v. Sanchez, 161 La. 320, 108 So. 552. In the case just mentioned, it was shown that the cost of inspection would not exceed $1,800 per annum, whilst the fees collected by the city for that purpose amounted to nearly $5,800; and accordingly this court held that the fees charged were "obviously in excess of, the amount necessary to meet the expense and cost of the service contemplated."

But that is not the case here; the facts being as set forth by the district judge in the following excerpt from his opinion:

"The inspector is the chief of police of the city, who is paid a salary of $135 per month in globo for attending to the duties of both offices. When there are seven markets paying inspection fees, as at present, it is apparent that approximately one-half of his salary comes from that source. What proportion of his time is devoted to his duties as inspector and as chief of police, respectively, the evidence does not show; but the mayor of the city testified that the duties of tax collector, which this same officer performed before, had to be taken from him in order to give him more time for his inspection duties; that proper inspection cannot be made under $900 a year, if the city had to employ a man for that purpose alone. The chief of police testified that, because of his added duties as inspector, he is required to be up and at work as early as 4:30 in the morning. To this should be added the responsibility which is his in enforcing this ordinance enacted in the interest of the public health of the people of the city. It may be that, for a time, the inspections were irregular and rather perfunctory, as testified to by most of the plaintiffs, but an ordinance of a municipality is not to be condemned because the officer charged with its enforcement is derelict in the performance of his duty. Since January 1st of this year (1928) there seems to have been a conscientious effort and determination on the part of the inspector and of the city to make regular daily and proper inspections, which early thereafter brought about some good results. The important difference I find between the ordinance and its results in this case and the one in which the fees were held to be unreasonable and exorbitant by the Supreme Court in the case of City of Baton Rouge v. Sanchez, 161 La. 320, 108 So. 552, is that, under the method of assessing fees per head of animal slaughter, the city of Baton Rouge collected over $5,700 per annum, while the inspection could be carried on at a cost of approximately only $1,800; whereas, under the ordinance in this case, the highest collection ever made amounted to only $840, and proper inspection, according to the mayor, cannot be made at a cost under $900.

"After having carefully considered all the facts and circumstances in this case, I am of opinion that the plaintiffs have failed to make out a case with that degree of certainty which I think is necessary to justify a court in setting aside a municipal ordinance or declaring it unconstitutional upon the ground of its being arbitrary or unreasonable; and for those reasons judgment will be rendered in favor of the defendant, the city of Donaldsonville, and against plaintiffs, dismissing their suit and discharging the rule which they have presented for an injunction in this case."

We think the trial judge has correctly distinguished the two cases. In the Sanchez Case, the fees charged were shown to be obviously in excess of the cost of inspection; in this case no such showing is made, but, on the contrary, the evidence shows that the cost of inspection would be in excess of the amount collected as inspection fees, if it were not that the city council had, in the interest of economy, combined the duties of two offices and thus reduced the cost of inspection.

### Decree.

The judgment appealed from is therefore affirmed.